STATE OF NORTH CAROLINA, EX REL. COMMISSIONER OF INSURANCE v. NORTH CAROLINA AUTOMOBILE RATE ADMINISTRATIVE OFFICE, NATIONWIDE MUTUAL INSURANCE COMPANY, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, ALLSTATE INSURANCE COMPANY, THE AETNA CASUALTY AND SURETY COMPANY, HARTFORD ACCIDENT AND INDEMNITY COMPANY, GREAT AMERICAN INSURANCE COMPANY, THE TRAVELERS INSURANCE COMPANY, UNITED STATES FIDELITY AND GUARANTY COMPANY, LUMBERMENS MUTUAL CASUALTY COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, UNITED STATES FIRE INSURANCE COMPANY, IOWA NATIONAL MUTUAL INSURANCE COMPANY, ST. PAUL FIRE AND MARINE INSURANCE COMPANY, UNIGUARD MUTUAL INSURANCE COMPANY, THE SHELBY MUTUAL INSURANCE COMPANY, AMERICAN MOTORISTS INSURANCE COMPANY AND AMERICAN MUTUAL LIABILITY INSURANCE COMPANY

No. 7410INS582

(Filed 18 December 1974)

Insurance § 79.1—decrease in automobile liability rates — effect of energy crisis

　　Order of the Commissioner of Insurance decreasing automobile liability insurance rates for bodily injury and property damage, entered after hearings were conducted for "consideration of what effect, if any, the energy crisis should have upon private automobile insurance rates," was in excess of the authority of the Commissioner, was unsup-

ported by material and substantial evidence, and was affected by other errors of law. G.S. 58-9.6.

Chief Judge BROCK dissents.

APPEAL by North Carolina Automobile Rate Administrative Office and certain member companies from orders of the Commissioner of Insurance filed 6 March 1974 and 8 March 1974. Heard in Court of Appeals 29 August 1974.

*Attorney General Robert Morgan by Assistant Attorney General Charles A. Lloyd for Intervenor appellee.*

*Commissioner of Insurance John Randolph Ingram by Staff Attorney Isham B. Hudson, Jr., for Commissioner of Insurance, appellee.*

*Allen, Steed & Pullen by Arch T. Allen, Thomas W. Steed, Jr., and Lucius W. Pullen; Broughton, Broughton, McConnell & Boxley by J. Melville Broughton, Jr., for defendant appellants.*

CAMPBELL, Judge.

The North Carolina Automobile Rate Administrative Office is required:

> "(1) To maintain rules and regulations and fix rates for automobile bodily injury and property damage insurance and equitably adjust the same as far as practicable in accordance with the hazard of the different classes of risks as established by said bureau.
>
> \*   \*   \*   \*
>
> (4) The bureau shall have the duty and responsibility of promulgating and proposing rates for liability insurance for motor vehicles which are private passenger vehicles, taxicabs, commercial cars, and for garage liability insurance as determined by classification plans promulgated by the bureau and approved by the Commissioner. The bureau also shall have authority to maintain rules and regulations and promulgate and propose rates for automobile medical payments insurance, uninsured motorists coverage and other insurance coverages written in connection with the sale of automobile liability insurance on private passenger cars, taxicabs and commercial cars and garage liability insurance, . . . " G.S. 58-246.

On or before 1 July of each year the Rate Office must submit to the Insurance Commissioner data necessary to compile statistics for the purpose of determining the underwriting experiences of automobile liability injury and property damage insurance and must submit a rate review based on that data. "Such rate proposals shall be approved or disapproved by the Commissioner in writing within 90 days after submission to him: Provided, the Commissioner shall have at least 30 days after the completion of hearings and the receipt of any additional data requested from the North Carolina Automobile Rate Administrative Office in which to consider the rate proposals." G.S. 58-248.

The rates now in effect were established, effective 10 October 1973, upon a filing of the Rate Office made 1 July 1971. As required by statute, the Rate Office made its next annual filing on 30 June 1972. This filing is still pending before the Commissioner of Insurance. On 29 June 1973, the Rate Office again made the annual filing required by G.S. 58-248. After the new rates were established effective 10 October 1973, the Rate Office, on 26 January 1974, made an amended filing which reduced the overall requested rate level increase.

The Commissioner has not held hearings on the 29 June 1973 Rate Office filing as amended on 26 January 1974, which contained the relevant rate-making data required by statute. Instead, the Commissioner proceeded to conduct hearings for "consideration of what effect, if any, the energy crisis should have upon private automobile insurance rates." Hearings were held on 19, 26 and 27 February 1974 and on 5 and 6 March 1974.

The Commissioner made no inquiry as to the accuracy, reasonableness or fairness of the 1973 filing. Instead the filing was accepted as true and accurate. The record on appeal consists 322 pages in addition to voluminous exhibits. During the course of the hearing on 5 March 1974, the Commissioner announced his decision and ordered that the automobile liability insurance rates, which had just been placed in effect on 10 October 1973, be decreased by 14.50 percent for bodily injury and 11.24 for property damage, effective 26 March 1974. The following day, the proceeding was reopened for reception of evidence purporting to show anticipated earned premiums, operating expenses and loss expenses. A ten-page order was signed and filed. A supplementary order was also entered relating to the effective date

of the order, which, among other things, required a refund on all policies with an initial or renewal effective date of 26 March 1974, or thereafter, even though the policies may have been written, delivered or issued for delivery prior to 26 March 1974.

The dissent from the opinion in this case insures the absolute right and reasonable probability of an appeal to the Supreme Court. For that reason, we do not elect to summarize the evidence or discuss all of the assignments of error.

We hold that the order must be reversed for the reasons that (1) it is in excess of statutory authority of the Commissioner; (2) it is unsupported by material and substantial evidence in view of the entire record; and (3) it is affected by other errors of law. G.S. 58-9.6.

Reversed.

Judge VAUGHN concurs.

Chief Judge BROCK dissents.